Well, good morning, everyone. Welcome. I am pleased to be here today with two of my marvelous senior colleagues, Judge Bobby Baldock on my right here, and participating by Zoom this morning is Judge Mike Murphy. We intended to take a break after the third case this morning, although we might have the prerogative to change our mind on that, but that's our brief, so we'll have two after that, and we will be closing the courtroom for the last case in case any of you are still here. So I'll call the first case, Cortez-Lazcano v. Whitten. It's case number 22-5031. Counsel? May it please the Court. James Hankins from Oklahoma City for the appellant, petitioner, Mr. Lazcano. This is a child sex abuse conviction out of Tulsa County, Oklahoma. The Certificate of Appealability was granted on two issues. There's a VATS claim and an IAC claim. I'd like to emphasize a couple of things on the IAC claim first. The first thing is the timing and the development of the record. Sometimes, I've seen cases over the years where a petitioner sitting in prison and he thinks, well, maybe there is that plea agreement that I thought I was thinking about. And I think, naturally, appellate judges, prosecutors look at that with the jaundiced eye, as they say. Here, we have, I think, a fairly unique circumstance of timing because this matter was brought to the attention of the trial court. On the first day of trial, prior to jury selection. And it wasn't even the defense counsel or Mr. Lazcano who brought the issue up. It was raised, in essence, by the prosecutor because she wanted to make a record of the plea offers that had been made in the case. And she's going through them. There's four of them. One on the day of trial that was 25 years in prison to do at 85%. That was rejected on the day of trial. There was one before of five years in prison, 20 out, split sentence. That was rejected. There was a third one of a straight 25 years suspended. And so, Mr. Lazcano is sitting here listening to this. And there's a fourth one that she goes over. And this is the one where, remember, we're talking about we're talking about child rape allegation here. And this fourth plea offer is five years suspended, five years of paper time, on a reduced charge that is a non-sex offender registrable crime. And on a no vote plea. You don't even have to... There's a break there, though, that's important or was important to the OCCA when it resolved this issue and found that the plea offer was conveyed. And that's that after the prosecutor recited the three different offers, that had been rejected. And it was agreed those had been rejected. It wasn't the prosecutor, but it was the five-year suspended no contest plea offer last time we came back to court. Because he thought that it wasn't going to be recited by the prosecutor. And then the prosecutor confirmed that and said, oh yeah, I've got a memo in the file saying defendant rejected the offer. That offer. The very offer that you're now arguing wasn't rejected. And the Oklahoma But what happened, Your Honor, with respect, when that was discussed, Mr. Lozcano had an off-the-record conference with his counsel and said, look, I understand the first three. I reject those. What is this fourth one you're talking about? I don't recall that at all. And think about how strong that is. There's a reason why he, there's a reason why this became an issue. And defense counsel told the court the conversation he had just had with Mr. Lozcano and said, look, my client doesn't recall ever receiving this offer. And there's nowhere in the record where Mr. Matheson, defense counsel, ever says that he could definitively say that he even conveyed that offer. And there's one aspect Here's the thing. I mean, we don't get to look at this in the first instance. Maybe I might agree with you if we did, but we've got a doubly deferential standard here. And so what we need to talk about is what the facts were that the OCCA relied on in finding that the plea officer was How do we reverse that? How do we reverse that? And so there were several facts as I understood it that the OCCA relied on. One was the mention of the prosecutor himself before it was ever, or I'm sorry, the defense counsel before the prosecutor ever discussed the rejection of the plea offer. And then the OCCA also relied on the defense counsel's affidavit saying that his practice, he doesn't have a specific recollection of conveying this offer, but his practice was to relay any and all offers that came along. He also made that statement in the courtroom. So there's two affidavits from counsel saying, no, he doesn't have a specific recollection, but his practice was definitely to convey the offer. So again, I'm not saying I would agree with the OCCA, but I don't think that's our issue, is it? Well, the OCCA did not make a finding of fact that the plea offer was conveyed and rejected. What the court said is that's the most probable thing that happened here. So that's not, in our view, that's not a finding of fact, that's deserving presumption of correctness. Even if it was, the facts show that it's not correct. You need to explain that to me, because we've just gone over, Judge Moritz just went over with you what they determined or what they said early on that there was a rejection and it was in the record. So how do your facts differ from that? Because rejecting the plea offer, in our view, was most likely done by counsel. The legal issue is, was it conveyed? What's the facts to that, that it was more likely, you know, rejected by counsel? I mean, we don't see that. The fact that when the prosecutor, when these plea offers are being recited in open court, this is prior to trial. So the outcome is unknown. And the accused himself says, time out, wait a minute, I didn't hear that. And then defense counsel says, well, I don't recall conveying that. The issue here, Judge, I think what actually happened here, and this is not really in the briefs, and I probably could have explained this, relied upon a little better. In counsel's explanation, it's in the appendix 3, I think at pages 10 and 11. He's talking about this fourth plea agreement. And they're set for trial on that day. Now the trial didn't, obviously, happen on that day, but they're set for trial. And what he says is, I remember discussing this with the prosecutor, this fourth plea agreement. He doesn't say, he doesn't remember that he conveyed it to Mr. Loscano. What he said is happening, he's discussing it with the prosecutor, because they're about to have a trial. And so this is where the rubber's hitting the road. Are we going to resolve this case or not? He said, while he's talking about it with the prosecutor, Judge Gillert comes out and says, and this is Tulsa County, there's a very busy trial docket, the cases stacked up, some go, some don't go. So he's waiting there to see if their case is going to go. Judge Gillert comes out and says, no, your case isn't going today. So immediately the pressure is off. And I suspect the most likely series of events would happen here is trial counsel discussed this plea office offer with the state. Judge Gillert comes out and says, we're not going today. And so it was either rejected outright by trial counsel at that time, or just not accepted. And I'm sure trial counsel was going to, you know, intended to discuss it with Mr. Loscano later, but you know, things happened and just didn't happen. The, you know, the trial lawyer says it's his general practice to convey plea offers to clients. Of course he's going to say that. I would say that because it's true. Counsel, I think before your time is all gone, you better also go to your second issue on the Batson matter. On the Batson claim, Judge, I would, I think the briefs go through a lot of it. There is one aspect that I didn't really emphasize that I would like to bring to the court's attention. There's two statements by the prosecutor here concerning the Batson legal rules that are misstatements. I listed two of those in the brief where she says there has to be a pattern before a Batson claim can even be raised. That's not true. The second one was... Which juror did that? Do you remember what, at what point, which juror was that? I think it was before the first one. Because she was arguing that... Mr. Cherry? Yes, Your Honor. Because she was arguing that we can't even make it at this time. Right, okay. And that's not the law. Is there anything in the record that indicates that the judge accepted the prosecutor's representation? I believe the trial court was silent on that and made no comment on that. Now, the second one was this claim or this observation by the prosecutor that two of the African-American jurors are of different races than the accused, who's Hispanic. And obviously, the court can read the transcript. But to me, it reads as if a Batson claim or a Batson legal error cannot lie when the subject jurors and the accused are of different races. It kind of seems like that's what she's arguing there. And under powers, obviously, that's not the law either. What response was there from counsel to that statement from the prosecutor? She said, for the record, the race of the... Response from defense counsel? Yeah, there wasn't any, was there? No, Your Honor. No rebuttal or anything? No, Your Honor. Once the prosecutor offered her reasons, there was no objection to that or no rebuttal? Well, trial counsel made the Batson assertion several times. It's a preserved claim. But he did not cite... In his rebuttal, there wasn't any rebuttal as far as once the prosecutor gave the reasons on that particular juror. I think it was Juror Rose, Mr. Rose. There wasn't any rebuttal offered by the defense counsel? Correct. He didn't say, no, you're wrong. Powers v. Ohio is clearly... His letter, yeah, okay. There was no citation to Powers. Now, there's a third one that's in the record I didn't really highlight in the brief that I I'm going to quote the prosecutor on this. Because what she says, this is during the Batson discussion, and trial counsel is asserting there was an error here, and they're arguing it. And she's making her case to the trial court. And this is what she said, and I quote, I can strike as many minorities as I want, as long as there's a race-neutral reason. And the brazenness of that, it's not only brazen, it's legally false. And that's what Snyder and Miller L., that's what they say. Just because the prosecutor offers a race-neutral reason, Batson is concerned with the striking of minorities with racial discriminatory intent. So even if there is a race-neutral reason given, those reasons have to be looked at. I think it appeared to me that she was referring to her obligation, which was to provide a race-neutral reason once the objection was made. But in any event, you didn't make this argument in your brief, I don't believe. Well, I didn't cite to that particular comment. But did you make the arguments or questions? Well, it's not an argument, Judge, it's just a comment on the record. The legal claim is a Batson claim. Judge, I'd like to reserve one minute, if I could. All right, thanks. Mr. Herman? May it please the Court, my name is Tanner Herman. I'm appearing today on behalf of the respondent, Rick Whitten. I'll begin, as Petitioner did, with the IAC claim. Petitioner's arguments here are primarily based on speculation and Petitioner's lack of memory as to the plea offer. He can cite nothing in the record that is concrete evidence indicating that this plea offer was not conveyed to him. And on the contrary, the OCA found it was most probable that the offer was conveyed to him, citing specific facts from the record. These are a factual finding.  The court said it's most probable that the offer was made. Does it make any difference that they use that language? So the standard under Strickland is whether there's a reasonable probability that trial counsel was ineffective. I think by stating that there is most probable that this offer was conveyed to counsel, and the question here being whether trial counsel was ineffective as to whether they conveyed this offer, that the OCA is making a finding in the other direction, that this offer was in fact conveyed, and that the Petitioner had not established that there was a reasonable probability that the offer was not conveyed. This is entitled, Deference and Lessons Rebutted by Clear and Convincing Evidence, which Petitioner cannot muster on this appeal. Notably, as this court stated, that there are several instances in the record where Petitioner's own counsel states that this offer was made, they were aware of it, and it was rejected. This was stated at the pretrial hearing, where counsel himself injected this offer into the record and stated that that was what they rejected when they came back to court. And he further enunciated that he has a pattern and practice of conveying all plea offers to his clients. He said that in pretrial and in his post-conviction affidavit. Further, we'd point the court to the statements in sentencing made by defense counsel. There, defense counsel was arguing that the court should suspend entirely the 25-year sentence, and noted that at one point, the prosecution thought this case was worth a five-year suspended sentence offer. And he states, quote, Mr. Cortez Lozcano rejected that offer. So we have further substantive evidence in the record stating that the defendant himself rejected the offer made by the prosecution. Well, he then does get reminded, as apparently by his client, when they go out and visit about it outside of the courtroom, that his client had no recollection of that offer. Correct. Certainly about rejecting it. When he makes that statement initially in the pretrial hearing, he is corrected by his client after an off-the-record discussion, where his client says he does not remember, not that you didn't tell me, but that I don't remember. But this second statement occurs at sentencing, after we have gone through the trial, and it's much more definitive than the first. Rather than stating that we rejected this offer, he says specifically, Mr. Cortez Lozcano rejected that offer. So when you're looking at the facts in the record— It's inconsistent with what he said previously, though. Yes, it is. It is inconsistent with— A lot of inconsistency going on here. Correct. But ultimately, as you noted, the determination here is whether the OCA was unreasonable in reaching its factual determination. Well, what about the fact that the OCCA actually misstated what the offer was in a very significant way? Could you— I think they said that he pled guilty, or that the offer was for him to plead guilty, which was not the offer at all. It was a no-contest plea to a lesser charge. And that's significant, because Mr. Cortez had resisted pleading guilty. Correct. Mr. Cortez Lozcano— And the OCCA, that's certainly an erroneous factual statement. It's an erroneous factual statement, yes, because the offer was for a no-contest offer. But the question is whether that is a material erroneous factual statement. Why isn't it? It isn't on this question of whether the offer was conveyed, because the issue here is whether he heard this offer, whether he knew about it. Now, whether he would have accepted it, certainly, whether that offer was a no— Relative to prejudice, right? Yes, prejudice. So let's talk about that prejudice determination, because why doesn't that essentially, to me, put into question their prejudice determination when they weren't even clear and correct on what they said he would not have— they made a factual finding he would have pled to this even if he'd been offered it. Yes. And they did so based on an erroneous factual statement that it was a plea of guilty, and they said he hadn't wanted to plead guilty. He'd been consistent. So he wouldn't have pled guilty. So don't we throw the prejudice prong analysis out if we reach it? No, Your Honor. I think the ultimate determination on prejudice is nevertheless reasonable based off the facts that were before the OCCA. As the OCCA noted, he continued to assert his innocence, and not just assert his innocence in terms of no contest or guilty, but he continued to assert his jury trial rights. It was his intention to hold the state to its burden of proving his conviction. He was asked specifically at trial about this, where he took the stand in his own defense. He was questioned and said, you have continually requested your jury trial rights, correct? He stated, yes. And he was asked why that was, at which point he stated, because I didn't do any of the stuff that she said I've done, and I'm not going to plead to something that I didn't do. So there's a reading of the record here, which is permissible, that finds that ultimately what he did not want was, what he wanted was somebody to prove this. He wanted to hold the state to its burden. He didn't want them to get the, you know, essentially for them to get an easy one and get his conviction. Certainly, a no-contest plea might have gotten him there. Potentially, Your Honor, but to a lesser charge. He wasn't pleading to what he didn't want to plead to, and he wasn't pleading guilty at all. But it's worth noting that under Oklahoma law, there still would have had to have been a factual predicate entered into the record for the no-contest plea. That factual predicate would have been the allegations here that he intended to dispute. Further, while the defendant asserts that this would have avoided a sex offender registry, that's not clear from the record. The substantive law on sex offender registration in Oklahoma requires registration for any offense or attempt to commit offense of child sexual abuse. The plea here was to assault with intent to commit a felony. The factual predicate for that would have revealed that the felony he intended to commit was child sexual abuse. So there's no guarantee that by pleading to this statement, he would have avoided sex offender registration entirely. Ultimately, we think that on both prongs here, the OCA made a reasonable determination. This Court could disagree on whether that was a correct determination and disagree as to whether they would have made the same determination if they had resolved this in the first. Did they make a determination on the second prong of pride that the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it? No, they didn't address those two questions. That's problematic also, isn't it? We don't really know. Well, the threshold appears by layering the analysis as such in Fry and Laffler that the threshold question is whether they would have accepted the offer. Ultimately, if you resolve the issue there, then you don't need to reach the second questions as to whether this would have been withdrawn and whether the court would have accepted it. Ultimately, if the court did decide to review this issue to no vote, the court would have to resolve those prongs itself. And we have evidence here that goes to both those prongs. For example, as I noted, the sex offender registry question and whether or not petitioner would have allowed the factual predicate to be entered in the record without objection. The court could not have accepted the offer if there was no factual predicate. Further, we know from the sentencing hearing that the petitioner was subject to an immigration hold. They were arguing over whether or not this sentence should be suspended entirely. And the prosecution got up there and argued that if the sentence was suspended entirely, he would effectively serve no prison time. That because he was not in custody, he would be immediately deported if he was given a suspended sentence. Petitioner would have had to have been advised on those immigration consequences before the plea could have been entered in the record. And that not only bears on whether he would have accepted the plea, but also whether the court would have allowed the plea to be entered. Again, those are the only questions that we have. Counsel, let me ask you. Is there anything in the record, according to your view, that avoidance of the possibility of a sexual register requirement was any part of this consideration? No, Your Honor. Is there anything in the record on that? No, Your Honor. A record wasn't made as to the sex penalty. In fact, no, it's not on the record. But it's not clear that a double plea to a non-sex partner would require registration, correct? We would state that it is fairly clear that it would require registration. The substantive statute on point is Title 57, Section 582, which includes a no low plea within its consideration and states that any crime involving the commission of child sexual abuse or the attempt to commit child sexual abuse is subject to sex offender registration. We know from the facts of this case that the factual predicate would have revealed that even on a conviction of assault with intent to commit a felony, that petitioner was at least attempting to commit child sexual abuse, subjecting him to registration under Oklahoma Sex Offender Registry Act. But there's no admission of that. There may be a factual basis for a no low plea. There is no admission of that. And therefore, I don't see how it would possibly be a basis to require registration. Respectfully, Your Honor, that would be a question for Oklahoma state law. And yes, we do not have a record on how the court would have resolved that issue. Wait a minute. If you're up here on habeas and you say that's a reason why an interest should be made that he rejected that offer, it seems like it's a question for us now. Your Honor, we're stating that that should only be considered because the OCA did not consider that in making its determination. But that would be relevant for this court to consider were it to reach the issue to know. If they didn't make that and there's no facts in it, why in the world is that that motivation in front of us? Particularly when you say we cannot decide that question. It must be the state court. I don't understand this whole line. The motivation was placed before this court because Petitioner is arguing that part of the reason he states he would have accepted this offer is because it would not have required him to register as a sex offender. And we just have to accept your proposition that it's likely that he would have registered. We can't delve into that, correct? The court could not ultimately resolve the state factual issue. But what we're stating is that it's not entirely clear from this record that he would have avoided sex offender registration by accepting this plea offer. What else is in the record about the immigration issue? And that is a requirement for him to leave the country. That's discussed in the sentencing hearing. There, as I know, the prosecutor injected into the record that currently at the time of sentencing, the defendant was subject to an ice hold and proffered without objection from defense counsel or pushback that were defended to be given a suspended sentence, he would have been subject to immediate deportation. And he was not in custody at the time of trial, correct? Correct. Was he immediately put in, taken into custody after the verdict? I believe he was, Your Honor. Okay, now right there, Gomey had two distinct differences. He was not in custody at the time the immigration issue is pertinent, but he is in custody at the time you're saying that that was first disclosed. Isn't that a significant difference? It means that we cannot consider that? No, Your Honor. Ultimately, he would have had to have been, even if he was not in custody at the time that the plea offer was made, and as the petitioner highlighted, courts are viewed, view post hoc assertions about plea negotiations with skepticism and the Supreme Court has decided, has instructed us to view the evidence that's relevant at the time the offer was made. His counsel would have had to, in order to be effective, communicated any immigration consequences for the plea in question. And under the Oklahoma substantive law, the court would have had to have made a record that he was aware of any immigration consequences before it could have accepted his plea. Ultimately, OCA did not reach these issues. They're only relevant if this court considers this issue to know about. Briefly, with my time remaining, I'd like to turn to the Batson question. Here again, petitioner relies primarily on speculation. Speculation of what the prosecutor said about the substantive law of OCA informed his decisions as to how he struck these jurors. Ultimately, what we would assert here is that the prosecution was not misstating the law. The prosecutor repeatedly used this phrase, pattern, but it's clear from the context he was referring to the first step of the Batson inquiry, the prima facie case, which, as the prosecutor noted later in the record, triggers their duty to provide a race-neutral reason for the strike. That was what the prosecutor noted when he struck juror Z.C. And at the time, the defense counsel merely stated in making their prima facie case that juror Z.C. is a minority and that his client was also a minority. What was left out of the record was that juror Z.C. was not of the same minority class as his client. Now, there is a separate test initiated by the Supreme Court for determining whether or not a juror of a different race of the defendant was struck using a improper peremptory strike. That's the powers decision. So the prosecutor was on solid grounds in pointing out, you have not made a prima facie case merely because I have struck one minority juror who, in fact, does not share the same race as your client. Further, when he struck juror D.R., there the court noted that potentially a pattern had occurred because the prosecutor at that point had struck two minority jurors. But the prosecutor went up to the record and stated expressly, for the record, these two jurors are black and the defendant is not. The prosecutor was attempting to clarify the record and noted the record is black and white and that the record is colorblind. There was then a distinct break after the prosecutor noted the races of the jurors where the prosecutor then went into his race-neutral reasons. The race-neutral reasons by the prosecutor were separated from his clarification of the record. The prosecutor was clearly aware of the defendant's burden on step one and his own burden after that is met on step two and was simply preserving arguments as to whether or not the burden was met on step one and clarifying the record for further review. We agree with the decision of the Northern District and we would ask that this court affirm that decision. Thank you. Rebuttal. Three quick things, Your Honor. Number one, in our view, the sex offender registration, whether or not under Oklahoma law the reduced charge would have been registrable, non-registrable, in our view, that's irrelevant. The only inquiry is, did Mr. Lozcano believe it to be so? And he did. Would he have accepted the offer? In his affidavit, submitted... Isn't it relevant if... Were you counsel below? I was not. I mean, it's relevant because wouldn't counsel below have had to advise him about that? If he believed it and it wasn't true or it was true, wouldn't we need to know what the law was on that? What counsel presumably would have advised him? Yes, and that probably would have been an additional claim if it was misadvised. In other words, if it was promised non-registry and the Oklahoma court said, well, yeah, you actually do have to. That would be... I'm out of time, Your Honor. May I make one more quick point? Finish up, yeah. On the sentencing, counsel cites to the sentencing transcript and the statement made by counsel there. And Judge Balduck asked me, as I was about to sit down the first time, well, did I highlight the prosecutor's statement? Well, I did not. I was... Last night, I was looking through the brief filed by the state in the Court of Criminal Appeals and I didn't see anywhere where the state cited to the sentencing transcript into that statement. So in our view, that's going to be a new argument and weighed as well. If I may excuse, Your Honor. Any other questions? Thank you, yeah. Counsel are excused and the case will be submitted. Thank you very much for your arguments. They've been very...